results. Michigan, Vermont, New York, and other states, have laws providing that if property is seized by the collector, in the possession of a delinquent tax-payer, the true owner shall have no remedy for it against the officer or the government. He must look solely to the person for whose tax it was taken. In others it is provided by law, or ruled upon principle, that if judgment be rendered against a city or town, any citizen's property may be seized, and he be remitted for reimbursement to a suit against the municipality. One of these laws was attacked in Sears v. Cottrell, 5 Mich. 251. It was claimed that to subject the property of one man to seizure for the tax of another, for no other reason than because it might accidentally be in his possession, was in violation of the causes securing "trial by jury" and "due process of law. The able opinion of Justice Christiancy is one of the most interesting and instructive to be found on this subject. The distinction is drawn between private litigations and those proceedings in which the political power enforces its claims. Its full history and able argument are full to show, that in practice these constitutional provisions never have been, and that public policy forbids they ever should be, applied in the assessment and collection of the public revenue. In Sheldon v. Vanbuskirk, 2 Comst. [2 N. Y.] 478, a similar statute of New York is referred to in illustration of this general principle.

The whole field of the police power is fertile with pertinent illustrations of the utter inapplicability of these constitutional generalities, when the public asserts a right. In People v. Hawley, 3 Mich. 330, the defendant owned extensive breweries, which were rendered worthless in a day, by an enactment making his lawful business a crime; and other cases in that and other states upon similar statutes, and those in reference to destroying property in cases of conflagration and pestilence, and the promotion by taxation of public improvements which, by indirect injuries, practically destroy one man's business and give it to another, are familiar instances in which these general provisions have been invoked again and again, only to have it repeated that they are of no significance, when in any form this political right is exercised. See 18 Wend. 127; 2 Denio, 461.

A strong illustration of how firmly judicial opinion is fixed in favor of maintaining to its full extent this necessary public power, is found in the stringent construction in favor of the government, and against the citizen, which has been always given to the clauses in our national and state constitutions, providing that property shall not be taken for public use without compensation. It may be injured indefinitely, and under this clause it has been held no compensation is due. A private agreement would not be

thus interpreted. See Sedgw. Const. Law, 524.

Cooley on Constitutional Limitations was cited to show that the governmental interpretation of the statute might carry even the taxing power beyond its limit. It is not supposed much reliance was placed upon this; and it would not be noticed, did not the decisions in reference to the absolute immunity of the legislature from all judicial control in the whole matter of taxation furnish another numerous list of examples, showing that these constitutional protections do not control the exercise of power on the part of the government. McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316; People v. New York, 2 Black [67 U. S.] 620; [Bank Tax Cases] 2 Wall. [69 U. S.] 200, 3 Wall. [70 U. S.] 573, and many other federal judgments, assert the right of taxation, even to the limit of destroying the business or prohibiting indirectly the thing assessed. Fifield v. Close, 15 Mich. 505; People v. Mayor of Brooklyn, 4 N. Y. 425–427; Scovill v. City of Cleveland. 1 Ohio St. 126; Maloy v. Marietta. 11 Ohio St. 638; Reeves v. Treasurer of Wood Co., 8 Ohio St. 333; Armington v. Barnet, 15 Vt. 749; Weister v. Hade, 52 Pa. St. 478,—are but a small portion of the state decisions, which assert in reference to their legislatures this unlimited and wholly irresponsible power of taxation. The courts have no possible control over it. No matter how unjust or severe upon particular interests and persons, unless the imposition is at war with some special constitutional clause in reference to the subject, the provisions relied on in this case have never been held to authorize the interference of courts. Sedg. Const. Law, 502, 509, and 7 Cush. 53, 82.

Whenever the government seeks the property of the citizen, exercising the right of eminent domain, or by taxation in any of its numerous forms, the processes for seizure and assessment are, in the most plenary sense, within the discretion of the legislatures. It has been often said that the only correction for what is harsh and unjust is to be sought in the nature of our institutions. Those who study this history are not advocates for decreasing a power, without which no people ever have been continuously protected and prosperous.

The bill must be dismissed. Decree accordingly.

---

## Case No. 11,463a.
### PULLIAM v. PULLIAM.
Circuit Court, W. D. Tennessee. April 26, 1879.
[See 10 Fed. 23.]

---

## Case No. 11,464.
### PULLING v. TUCKER.
[Cited in Doan v. Compton, Case No. 3,940. See 4 Barn & Ald. 382.]